**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**SPARTANBURG DIVISION**

| | | |
|---|---|---|
| Diane Landrum, in her capacity as | ) | |
| Personal Representative of the | ) | |
| Estate of Aaron Clark Gray, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 7:10-cv-00007-JMC |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| Spartanburg County, Chuck Wright, | ) | |
| Christopher Raymond and Glen Stuart, | ) | |
| in their individual capacities, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This matter is before the court on Defendants Christopher Raymond ("Raymond") and Glen

Stuart's ("Stuart") (collectively "Defendants") Motion for Summary Judgment [Doc. 28] on Plaintiff

Diane Landrum's ("Plaintiff") Amended Complaint [Doc. 6], pursuant to Rule 56 of the Federal

Rules of Civil Procedure.[1]   Plaintiff filed no response to  Defendants' Motion for Summary

Judgment.  For the reasons set forth below, the court grants Defendants' Motion for Summary

Judgment.

**FACTUAL AND PROCEDURAL HISTORY**

This case arises out of a drug bust organized and conducted by the Spartanburg County

Sheriff's Department on February 10, 2005.  On February 7, 2005, the Spartanburg County Sheriff's

Office Narcotics Unit received information that Aaron Clark Gray ("Gray") was distributing crack

cocaine in the Spartanburg area, and the Narcotics Unit purchased $400.00 worth of crack cocaine

---

[1] The court previously granted summary judgment in favor of Defendant Spartanburg County and
Defendant Chuck Wright in the court's Order [Doc. 32], dated August 18, 2011.

using an undercover operative. The informant maintained contact with Gray throughout the week with the intention of making a second purchase from Gray.

On February 10, 2005, the Narcotics Unit arranged to purchase $1,600.00 worth of cocaine from Gray at a residence located on Overhill Circle in Spartanburg County. After the purchase was completed by the informant, Stuart and Raymond remained in the vicinity to obtain a description of the residence for the purposes of obtaining a search warrant. As Stuart and Raymond drove by the residence in an unmarked vehicle, they observed a car leaving which Raymond recognized as Gray's vehicle. Stuart and Raymond followed the car and radioed for a marked unit to initiate a traffic stop.

Before the second unit arrived, Gray turned into a driveway also located on Overhill Circle. At that time, Stuart believed that Gray was acting as if he was attempting to evade them and as if he knew something was wrong. According to the officers, they decided to place Gray under arrest and Raymond parked his vehicle at the mouth of the driveway. The officers exited the vehicle and instructed Gray to get out of the car and to get on the ground. Both officers were wearing marked clothing and allegedly told Gray numerous times to get out of the car and to get on the ground. According to the officers' testimony, as Stuart and Raymond approached Gray's vehicle, Gray placed the car in reverse and backed toward the officers. As the car was backing up and in fear of being struck by the vehicle, Raymond fired at the vehicle.

According to the officers' testimony, Gray began to drive erratically in the yard, turned the car around, and proceeded forward. Then, he reversed directly toward Stuart. Believing he was going to be overrun as the car was within three to five feet of him, Stuart fired at the vehicle. Raymond, also believing that the car was going to strike Stuart, fired at the vehicle. The car came toward Raymond, and he fired again. The car then slowed and came to rest. The officers approached the car, saw Gray slumped over, and immediately called for medical assistance. Stuart estimated the entire incident, from the initial approach on the vehicle to the call for emergency

medical services, took no more than fifteen seconds.  Gray was transported to Spartanburg Regional Medical Center where he later died from his wounds.

Some of the above facts as provided by Defendants in their Motion for Summary Judgment and supporting affidavits are contrary to those alleged in Plaintiff's Amended Complaint.  In the Amended Complaint, Plaintiff alleges that Stuart and Raymond did not have probable cause or reasonable suspicion to seize Gray, nor did they have proper identification or authority to attempt to seize Gray.  Plaintiff alleges that Stuart and Raymond attempted to seize Gray by opening his car door and attempting to pull him out of the car.  Plaintiff's Amended Complaint alleges that Gray rebuffed Defendants' attempts and tried to flea the area.  Plaintiff alleges that "at no time did Gray attempt to use his car as a weapon to threaten the lives of Stuart and Raymond." [Doc. 6 at ¶ 8]. Furthermore, Plaintiff alleges that "[w]ithout legal justification or threat to their personal safety, Defendants Raymond and Stuart began firing multiple, numerous and excessive shots in the residential neighborhood striking innocent homes, (interior and exterior), striking the vehicle being operated by Gray and striking the body of Gray."  *Id.*

Although the facts as alleged in Plaintiff's Amended Complaint contradict, in part, those alleged and supported by Defendants in their Motion for Summary Judgment and accompanying affidavits, Plaintiff did not file a response in opposition to Defendants' Motion for Summary Judgment or provide the court with any evidentiary support of the allegations set forth in the Amended Complaint.  Accordingly, for the purposes of Defendants' Motion, the court views the facts, as provided in Defendant's Motion for Summary Judgment and supporting affidavits, in the light most favorable to Plaintiff, the nonmoving party.  *See* Fed. R. Civ. P. 56(e); *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

Plaintiff has set forth the following causes of action against Raymond and Stuart:

1) a survival action claim under 42 U.S.C. §1983 against Raymond and Stuart for illegal seizure of Gray in violation of the Fourth Amendment; and,

2) a wrongful death action claim under 42 U.S.C. §1983 against Raymond and Stuart for use of excessive force during the seizure of Gray in violation of the Fourth Amendment.

## LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *See id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *See Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

4

Even where a motion for summary judgment is unopposed, the court must review the motion and determine from the facts before the court whether the moving party is entitled to summary judgment as a matter of law. *Custer v. Pan American Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993).

## DISCUSSION

Plaintiff alleges that Raymond and Stuart "seized [Gray] without reasonable suspicion to detain, without a warrant or without probable cause to arrest by shooting him and thereby exercising control over his person and terminating his movement." [Doc. 6, at ¶ 14]. Plaintiff further alleges that "[a]s a direct and proximate result [Gray] was both seized and killed by the bullets shot by the Defendants in violation of his Fourth and Fourteenth Amendment rights to be free from unreasonable seizures." [Doc. 6, at ¶ 14]. Defendants argue that Defendants are entitled to qualified immunity. In addition, Defendants argue that Plaintiff has failed to set forth a constitutional violation sufficient for recovery under § 1983.

### Qualified Immunity

Under the qualified immunity defense, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Cone v. Nettles*, 308 S.C. 109, 417 S.E.2d 523 (1992). "Qualified immunity ensures that "[o]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.'" *Swagler v. Sheridan*, Civil Action No.: RDB-08-2289, 2011 WL 2746649 (D. Md. July 12, 2011) (citing *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008)). "To resolve a qualified immunity defense, the court must (1) determine whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendants' conduct

violated a constitutional right, and (2) determine whether the right was clearly established at the time of the alleged misconduct." *VanDerHorst v. Hoffer*, C/A No. 0:09-cv-0706-SB-PJG, 2010 WL 1009997, at *2 (D.S.C. Feb. 16, 2010) (citing *Pearson v. Callahan*, 129 S. Ct. 808, 815-16 (2009)). "Courts may address the two prongs of the qualified immunity analysis in whichever order is appropriate in light of the circumstances of the particular case at hand." *Id.*

The court begins determining whether the facts, taken in a light most favorable to Plaintiff, indicate that Defendants violated Gray's constitutional rights. If the court finds no violation of Gray's constitutional rights, then the analysis ends there, Defendants are entitled to qualified immunity, and Plaintiff cannot prevail. *See Clem v. Corbeau*, 284 F.3d 543, 549 (4th Cir. 2002).

**Unreasonable Seizure**

The Fourth Amendment prohibits only those searches and seizures which are unreasonable. *Figg v. Schroeder*, 312 F.3d 625, 636 (4th Cir. 2002). "What constitutes a reasonable seizure depends on all of the circumstances surrounding the . . . seizure itself.'" *Id.* (quoting *United States v. Montoya de Hernandez*, 473 U.S. 531, 537 (1985)). Exigent circumstances make permissible a warrantless seizure even where no probable cause exists to believe that a crime has been committed. *Id.* at 639. In the presence of exigent circumstances, a police officer "need only possess a 'reasonable suspicion' that such circumstances exist at the time of the search or seizure in question." *Id.* (quoting *United States v. Groggins*, 163 F.3d 795, 797 (4th Cir. 1998)). In determining whether exigent circumstances existed the court may consider:

> (1) the degree of urgency involved and the amount of time necessary to obtain a warrant; (2) the officers' reasonable belief that the contraband is about to be removed or destroyed; (3) the possibility of danger to police guarding the site (4) information indicating the possessors of the contraband are aware that the police are on their trail; and (5) the ready destructability of the contraband.

*United States v. Turner*, 650 F.2d 526, 528 (4th Cir. 1981). However, the preceding factors do not provide an exhaustive list, and the court must look to the particular facts of the case at hand to determine whether exigent circumstances existed. *See id.*

The facts viewed in a light most favorable to the Plaintiff indicate that preceding Defendants' seizure of Gray, the Spartanburg County Sheriff's Department had received information that Gray was distributing cocaine. On the day that Defendants seized Gray, an informant had purchased $1,600.00 of cocaine from Gray at a residence on Overhill Circle as part of a police investigation. Defendants observed Gray leave the residence and believed that Gray's actions indicated that Gray was attempting to evade Defendants. Based on the facts before the court, the court finds that Defendants possessed sufficient information to justify a reasonable suspicion that a failure to seize Gray may have resulted in the removal or destruction of evidence such as the money Gray received from the sale of the cocaine to the informant. Thus, the court finds that exigent circumstances existed to justify Defendants' warrantless seizure of Gray, and such seizure was not a violation of Gray's constitutional rights.

**Excessive Force**

The Fourth Amendment's prohibition on unreasonable seizure includes the right to be free from seizure executed by excessive force. *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011). Whether an officer has used excessive force is analyzed under an objective reasonableness standard. *Id.* (citing *Scott v. Harris*, 550 U.S. 372, 381 (2007)). In considering whether Defendants used excessive force, the court must focus on the moment that such force was employed. *Id.* (citing *Elliot v. Leavitt*, 99 F.3d 640, 643 (4th Cir. 1996)). A police officer's use of deadly force is reasonable when the officer has probable cause to believe that a suspect poses a threat of serious physical harm to the officer. *Tennessee v. Garner*, 471 U.S. 1, 11 (1985).

The facts viewed in a light most favorable to Plaintiff indicate that after Defendants identified themselves as police officers, Gray began to use the vehicle which he was driving in a manner which exposed Defendants to a serious threat of physical harm. The facts do not indicate that Defendants used deadly force against Gray until they were in direct danger of being seriously injured or killed by the vehicle which Gray was operating. Based on the facts before the court, the court finds that Defendants' use of force was not excessive and was not a violation of Gray's constitutional rights.

Having found no violation of Gray's constitutional rights, the court finds that Defendants are entitled to qualified immunity.

## CONCLUSION

Therefore, for the reasons stated above, it is hereby ordered that Defendants' Motion for Summary Judgment [Doc. 28] is **GRANTED**.

**IT IS SO ORDERED.**

*J. Michelle Childs*

_____
United States District Judge

March 7, 2012
Greenville, South Carolina

8